UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
MARIO VOCCIA,


                    Plaintiff,                    **FINDINGS OF FACT AND**
                                                  **CONCLUSIONS OF LAW**

     -against-
                                                  12-CV-05909(KAM)(SMG)



UNITED STATES OF AMERICA,

                    Defendant.

--------------------------------------- X

**MATSUMOTO, United States District Judge:**

          Plaintiff Mario Voccia commenced this action against the

United States of America ("defendant"), pursuant to the Federal

Tort Claims Act ("FTCA") 28 U.S.C §§ 2671, *et seq.,* seeking damages

for a head injury he claims to have suffered in July 2008, when he

allegedly was negligently assisted by VA personnel into a shuttle

van owned and operated by the United States Department of Veterans'

Affairs (the "VA").  The liability portion of the claim was tried

before this court on July 12 and July 13, 2016.  (*See generally,*

Trial Transcript ("Tr.").)

          Having considered the evidence at trial, assessed the

credibility of the witnesses, and reviewed the post-trial

submissions of the parties,[1] the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure[2] ("Rule 52") and ultimately concludes, for the reasons set forth below, that plaintiff has failed to prove that the United States is liable for his injury.

## FINDINGS OF FACT

### I. Background

#### A. The Relevant Individuals

Plaintiff was 52 years old at the time of the July 8, 2008 accident that is the subject of this lawsuit (the "Accident").[3] (Tr. 80:3-5.) At that time, he wore reading glasses but did not need prescription eyeglasses or contacts for distance vision. He had no issues or limitations with walking short distances or climbing stairs. (Tr. 123:4-124:2.) Plaintiff was about five feet and ten inches tall, and weighed approximately 180 pounds at the time of the Accident in July 2008. (Tr. 122:22-123:3.)

---

[1] The post-trial submissions of the parties included: ECF No. 57, Defendant's Proposed Findings of Fact and Conclusions of Law ("Def. Mem.") dated 11/4/2016; ECF No. 58, Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl. Mem.") dated 11/4/2016; and ECF No. 60, Plaintiff's Opposition to Defendant's Proposed Findings of Fact and Conclusions of Law ("Pl. Opp.") dated 12/19/2016.

[2] Rule 52 provides, in relevant part, that following a bench trial, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52.

[3] Plaintiff testified that he was 60 years old on July 12, 2016, almost exactly 8 years after the Accident.

Lou Guo has been employed by the VA as a shuttle driver since 2004. (Tr. 16:18-25.)  Mr. Guo was the driver of the VA shuttle involved in the Accident. (Tr. 16:18-23.)  At the time of the Accident, Mr. Guo was approximately five feet and five inches tall, and weighed approximately 150 pounds.  (Tr. 72:6-17.)

Dewton Williams has been employed by the VA since 2006, initially as a shuttle driver, then as a Motor Vehicle Operator Leader, and currently as a transportation supervisor.  At the time of the Accident, Mr. Williams' title was Motor Vehicle Operator Leader.  (Tr. 175:5-9, 175:17-21, 176:3-5.)  Mr. Williams was the supervisor who responded to the Accident after being called by Mr. Guo.  (Tr. 133:6-14, 134:6-13.)

Sgt. Paul Annitto has been a VA Police Officer since 2004, and currently holds the title of Sergeant.  (Tr. 192:24-193:8.)  Sgt. Annitto also responded to the Accident after being called by Mr. Guo.  (Tr. 194:8-11.)

**B. The VA Shuttle**

At the time of the Accident, the VA operated a courtesy shuttle which transported patients between its New York City metropolitan area facilities.  (Tr. 133:22-134:5.)  Passengers who wished to take the shuttle arranged to place their names on a list, which was referred to as the passenger manifest.  (Trial Exhibit ("Ex.") 3.)  The VA courtesy shuttle the plaintiff was entering

when the Accident occurred was a 2008 Chevy Express Passenger Van (the "Shuttle"). (Exs. 1, J.) Plaintiff had ridden the shuttle, which used the same type of vehicle, at least twenty times prior to the July 8, 2008 Accident. (Tr. 119:21-120:2.) Passengers entered and exited the Shuttle through double doors on the passenger side of the van (the "Passenger Doors"). (Ex. J; Tr. 30:15-20, 85:17-23, 142:2-13.) The Passenger Doors were held closed by a U-shaped metal latch located at the top, in the middle, of the Passenger Doors (the "Latch"). The Latch was attached by the manufacturer to the Shuttle's ceiling. (Ex. J; Tr. 34:5-14, 157:22- 158:2.) The Latch was visible and unobscured, when the Passenger Doors were open, to someone preparing to enter the Shuttle through the Passenger Doors. (Tr. 177:9-12.)

In July 2008, VA shuttle drivers placed a stepstool in front of the Passenger Doors for passengers to use, if they wished, when entering and exiting the shuttle. (Tr. 145:19-21.) Although no evidence was proffered concerning the stepstool's dimensions, lay witnesses estimated that the top of the stepstool was approximately halfway between the ground and the Shuttle's first step and noted that the stepstool was not as wide as the Passenger Doors. (Tr. 43:24-44:6, 151:4-8, 182:6-7.) No evidence was presented concerning any industry standard requiring that a stepstool be provided for passengers to use when entering the

Shuttle. (Tr. 225:23-226:13.)

During his testimony, VA shuttle driver Lou Guo explained the general procedure he used in July 2008, when boarding passengers onto the shuttle. Mr. Guo first would park the shuttle in the shuttle loading area, lock the doors, and go into the office and obtain a copy of the manifest. He would then return to the shuttle, unlock the Passenger Doors, take the stepstool out of the shuttle, place it on the ground in front of the Passenger Doors, and call the passengers' names from the manifest. He explained that each shuttle had a stepstool which was stored either under the front passenger seat or in the back of the shuttle. (Tr. 42:4-43:23; *see also* Tr. 177:17-178:2.)

## II.  **The Accident**

On July 8, 2008, plaintiff's name was listed as a passenger on the manifest for the 12:30 p.m. shuttle. (Ex. 3.) Each of the shuttles, on which plaintiff rode at least twenty times before the Accident, had the same double doorway with the central latch through which passengers entered and exited the van. (Tr. 119:21-120:2.)

Plaintiff had ridden the Shuttle many times before the Accident and, therefore, was generally familiar with the Shuttle's configuration, including the latch at the top of the Shuttle's entryway. (Tr. 124:3-12.) Plaintiff was initially unable to board

the Shuttle because there was no seat available when he attempted to do so. However, another passenger got off and a seat then became available for plaintiff. (Tr. 87:16-88:1, 100:8-15, 141:8-14.) Plaintiff then proceeded to board the Shuttle. He did not slip or trip while doing so. (Tr. 129:17-21.) He was injured when he bumped his head on the Latch. (Tr. 112:25-113:2.)

**A. Evidence Concerning the Presence of the Stepstool**

Plaintiff testified at trial that he did not see a stepstool at any point on the day of the Accident. (Tr. 88:2-13, 102:11-19, 124:13-15.) Mr. Guo testified that putting the stepstool in place for boarding and alighting was part of his job and his usual custom and practice. He also testified that he had no reason to believe that he deviated from his usual practice of putting the stepstool in place for boarding and alighting on the day of the Accident. (Tr. 72:18-73:11, 73:24-74:19, 75:7-14.) The court finds Mr. Guo's testimony to be credible.

Further, VA Transportation Supervisor Dewton Williams largely corroborated Mr. Guo's testimony. Mr. Williams testified that shortly before the Accident, Mr. Guo called and asked him to come to the shuttle loading area to assist with an issue that had arisen with a passenger who had boarded the Shuttle even though his name was not on the passenger manifest. (Tr. 134:6-19, 139:24-140:5.) Mr. Williams testified that when he arrived at the shuttle

loading area, the stepstool was in front of the Passenger Doors, and neither he, nor anyone else, removed the stepstool at any point between when he got to the shuttle loading area and when plaintiff boarded the Shuttle. (Tr. 151:14-19, 184:7-12.) Mr. Williams explained, just like Mr. Guo did, that setting the stepstool in front of the Passenger Doors was part of the general process drivers used in July 2008, before passengers entered and exited the shuttle. (Tr. 72:18-24, 177:17-178:2.) Mr. Williams testified that he always ensured that the stepstool was in place when he was overseeing boarding and that he would not have allowed the boarding process to proceed without the stepstool being in place. (Tr. 178:6-8, 183:16-184:16.) The court finds Mr. Williams testified credibly.

Defendant argues that the court should not credit plaintiff's trial testimony that he never saw the stepstool at any time on the day of the Accident because his prior statement contradicted his trial testimony. (Def. Mem. at ¶ 17; Tr. 88:2-13, 102:11-19, 124:13-15; Ex. B.) Specifically, defendant notes that on June 20, 2011, plaintiff prepared a written statement recounting the events surrounding the Accident (the "June 2011 Statement"). In his June 2011 Statement, plaintiff stated: "As the driver pulled up, opened the doors, *and put the stepstool down so people can board*, passengers jumped in the van." (Ex. B

(emphasis added); Tr. 126:12-127:6; Def. Mem. at ¶ 17.) Plaintiff argues that his earlier, June 2011 statements were not inconsistent with his testimony because the statement that the driver "put the stepstool down" referred to the point in time when the other passengers boarded the van not when plaintiff boarded the van. (Pl. Opp. at ¶ 3.)

Plaintiff also objects to his June 2011 Statement being admitted to evidence because defendant did not lay the proper foundation to support its admission. (*Id.*) The court finds that defendant elicited testimony from plaintiff that laid a sufficient foundation for admission of plaintiff's June 2011 Statement into evidence. Further, plaintiff's counsel did not object to June 2011 Statement being admitted into evidence at trial; therefore, plaintiff's objections to the admissibility of his June 2011 Statement have been waived. (Tr. 126:5-10.) *See* Fed. R. Evid. 103(a)(1); *United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1995) ("To be timely, an objection . . . must be made as soon as the ground of it is known, or reasonably should have been known to the objector.") (citation and internal quotation marks omitted).

The court finds that plaintiff's earlier statements, including his June 2011 Statement and others, regarding the presence of the stepstool at the time of the Accident are entitled to greater weight on this point than his trial testimony. In

addition to plaintiff's June 2011 Statement that the stepstool was in place, the court finds that plaintiff did not report to the VA Police Officer, Sgt. Paul Annitto, immediately after the Accident that the stepstool was not in front of the Passenger Doors when he boarded the Shuttle. (*See* Ex. 1; Tr. 213:1-11.) Nor did plaintiff mention the stepstool as a factor in his Accident in his Notice of Claim that he submitted to the VA in July 2010 (the "Notice of Claim"). (Ex. A.) Both pieces of evidence undermine the credibility of plaintiff's testimony at trial that he did not see the stepstool.

Plaintiff argues in his Opposition to Defendant's Proposed Findings of Fact and Conclusions of Law (ECF No. 60), that no admissible evidence was presented as to why plaintiff did not mention not seeing the stepstool to Sgt. Annitto or in his Notice of Claim, and therefore, the court should find plaintiff's trial testimony about the stepstool as credible. (Pl. Opp. at ¶ 4.) Plaintiff's argument is without merit because he could have explained the inconsistency at trial. Again, plaintiff did not object to Sgt. Annitto's testimony at trial, nor did he object to the Notice of Claim being admitted into evidence. Thus, any objections that plaintiff may have had are waived. *See* Fed. R. Evid. 103(a)(1); *Yu-Leung*, 51 F.3d at 1120 ("To be timely, an objection . . . must be made as soon as the ground of it is known,

or reasonably should have been known to the objector.") (citation and internal quotation marks omitted). The court finds that the Notice of Claim was properly admitted under Fed. R. Evid. 801(d)(2) as a statement made by plaintiff offered by defendant against plaintiff. (Ex. A.) Further, the court finds that Sgt. Annitto credibly testified at trial about the type of information he typically included in a Uniform Offense Report, and that the Uniform offense Report was properly admitted under Federal Rule of Evidence 803(6). (Ex. 1; Tr. 213:1-20.)

The court finds credible Mr. Guo's and Mr. Williams' testimony that their custom and practice was always to use the stepstool when passengers were boarding or exiting the shuttle in 2008. Further, plaintiff's June 2011 Statement that "the driver put the stepstool down" was closer in time to the Accident, and plaintiff's failure to mention the missing stepstool in his Notice of Claim or to Sgt. Annitto on the day of the Accident, outweigh his trial testimony about not noticing the presence of the stepstool. The court finds plaintiff's June 2011 Statement, made three years after the Accident, is credible; and the court finds plaintiff's trial testimony, given eight years after the Accident, is not credible. The record is void of any evidence establishing that the stepstool was moved before plaintiff entered the Shuttle. Rather, Dewton Williams credibly testified that the stepstool was

in front of the Passenger Doors when plaintiff entered the Shuttle, and that he would not have permitted the boarding process to proceed if the stepstool had not been there. (*See* Tr. 151:14-19, 183:16-184:12.) Also, it follows that the stepstool would have remained in front of the Passenger Doors as the boarding process was ongoing. Further, plaintiff did not mention the missing stepstool to Sgt. Annitto, nor did he mention it in his Notice of Claim. Accordingly, the court finds that plaintiff's testimony at trial, that he did not see or notice the stepstool on the day of the Accident, is not credible when viewed against the entire record at trial. (*See* Tr. 88:2-13, 102:11-19, 124:13-15.)

## B. Evidence Concerning the Alleged Push by Mr. Guo

At trial, plaintiff testified that once a seat became available, he started to board the Shuttle by stepping from the ground onto the Shuttle's first step. He stopped on the first step to wait for a passenger who was already seated on the Shuttle to move his legs so plaintiff could move past him to the seat. He further testified that Shuttle driver Lou Guo was standing immediately to his right when he entered the Shuttle. (Tr. 102:1-13, 111:2-25.) Plaintiff testified that while waiting on the first step, he felt Mr. Guo push him from behind on his upper back near his shoulder blade under his armpit. (Tr. 112:1-24, 113:17-114:5, 127:8-17.) Plaintiff also testified that after Mr. Guo pushed

him, his head moved forward and hit the Latch. (Tr. 112:25-113:2.) The Court finds that plaintiff's trial testimony is inconsistent with his June 2011 Statement, where plaintiff claimed he was injured because he was caused "to stride up and into the van," and made no mention of being pushed forward. (Ex. B.) Further, immediately after the Accident, plaintiff did not tell Sgt. Annitto that he had been pushed. (Ex. 1; Tr. 213:12-20.) Nor did plaintiff mention anything about being pushed in his Notice of Claim. (Ex. A.)

Moreover, plaintiff's testimony at trial about the push was inconsistent with Mr. Guo's and Mr. Williams' testimony at trial and with the report prepared by Sgt. Annitto. Mr. Guo testified that when Mr. Williams arrived at the shuttle loading area, he gave Mr. Williams the passenger manifest, stepped approximately seven to eight feet away from the Shuttle, and stood toward the right front of the Shuttle while Mr. Williams resolved the seating issue and finished loading the Shuttle. (Tr. 48:18-49:22.) When plaintiff hit his head while entering the Shuttle, Mr. Guo testified that he was standing to the right of the Passenger Doors near the front passenger side of the Shuttle, and Mr. Williams was to Mr. Guo's left, standing closer to the Passenger Doors and to plaintiff, than Mr. Guo was. (Tr. 49:6-52:21.) At trial, Mr. Guo further testified that he did not assist

plaintiff when he got onto the Shuttle and could not have done so because he was standing a few feet away from plaintiff at the time. (Tr. 57:8-14.)  Mr. Guo explained that because Mr. Williams and Sgt. Annitto were standing closer to the Passenger Doors than he was, his view of the Passenger Doors where plaintiff entered the van was partially obstructed.  (Tr. 53:10-14.)  Mr. Guo testified that he did not see plaintiff hit his head, but he did see plaintiff get off of the Shuttle after hitting his head, part his hair, and show a small cut.  (Tr. 54:16-23.)

The testimony of Mr. Williams was largely consistent with Mr. Guo's testimony.  Mr. Williams testified that the seating issue was resolved when a passenger got off the Shuttle.  At that point, Mr. Williams had the passenger manifest and he resumed the boarding process.  Mr. Williams was standing to the right (when facing the Passenger Doors) of the Passenger Doors.  Mr. Guo was standing to his right, closer to the front of the Shuttle.  (Tr. 141:8-142:1, 144:1-19, 151:24-152:7, 178:9-179:2, 180:2-181:2, 185:8-18.)

Mr. Williams explained that he was preparing to call a name from the manifest when plaintiff hurriedly got onto the Shuttle.  Plaintiff made big strides, walked at a rapid pace, and hurriedly stepped directly from the ground into the Shuttle. Plaintiff did not use the stepstool even though it was available

and in place in front of the Passenger Doors. (Tr. 161:2-18, 164:16-18, 165:12-166:7, 181:24-182:13.) Plaintiff's back was to Mr. Williams as he boarded. Mr. Williams stated he heard a noise and realized plaintiff had hit his head on the area around the frame of the Passenger Doors. (Tr. 161:2-18.) Mr. Williams testified that neither he nor Mr. Guo rushed or hurried plaintiff to get onto the Shuttle. (Tr. 162:5-8, 164:12-15.) Although the Shuttle's departure had been briefly delayed, Mr. Williams' stated that his priority was making sure the Shuttle was safely and properly loaded. (Tr. 162:23-163:2.) Mr. Williams testified that he did not observe any physical contact between plaintiff and Mr. Guo. (Tr. 164:19-21, 167:20-168:2, 181:18-20.)

Sgt. Annitto testified that he was called to investigate the Accident and prepared a report thereafter. (Ex. 1; Tr. 194:8-11.) In his report, Sgt. Annitto noted that as plaintiff "stepped up into the van his head came in contact with the door hinge." (Ex. 1.) He also noted that "Mr. Williams and Mr. Guo stated that they did not observe Mr. Voccia receive the injury to his head." (*Id.*) The Court finds that Sgt. Annitto's report is consistent with the testimony of both Mr. Guo, who noted that his line of sight was blocked by Mr. Williams and Sgt. Annitto, and Mr. Williams, who testified that, because he was standing behind plaintiff, he heard, rather than saw, plaintiff hit his head. (Tr.

53:10-14, 54:21-23, 161:8-18.)  The court finds that Mr. Williams, Mr. Guo and Sgt. Annitto were credible witnesses.  Accordingly, the court finds that plaintiff's trial testimony claiming he was pushed up and into the Shuttle by Mr. Guo was not credible because of the weight of the contrary evidence, specifically Sgt. Annitto's Uniform Offense Report, and the testimony of Sgt. Annitto, Mr. Guo, and Mr. Williams, and because plaintiff failed to mention he was pushed in his report to Sgt. Annitto and in his Notice of Claim.

## CONCLUSIONS OF LAW

### I. Plaintiff Did Not Establish By a Preponderance of the Evidence that the United States Was Negligent

Under the FTCA, the United States is liable in the same manner as a private person for the tortious acts or omissions of its employees acting within the scope of their employment "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see also Molzof v. United States,* 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.") (citations omitted).  Accordingly, a federal court presiding over an FTCA claim must apply "the whole law of the State where the act or omission occurred." *Richards v. United States*, 369 U.S. 1, 11 (1962); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("State law applies to an

FTCA claim."). Further, state law applies to the alleged acts and omissions of the United States in an FTCA claim in the same manner it would apply to a private person. The United States may not be held to a stricter standard of care than would apply to a private defendant under similar circumstances, *see* 28 U.S.C. § 1346(b)(1), nor be subject to strict liability. *See Laird v. Nelms*, 406 U.S. 797, 803 (1972).

Plaintiff's alleged injury occurred within the State of New York. Accordingly, New York law applies. To prevail on a negligence claim under New York law, plaintiff must establish by a preponderance of the evidence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985); *see also Khalil-Mirhom v. Kmart Corp.,* No. 12-CV-5512 (ARR)(VVP), 2014 WL 173415, at *4 (E.D.N.Y. Jan. 13, 2014); *Berger v. Becker*, 709 N.Y.S.2d 418, 418 (2d Dep't 2000). "Negligence is conduct that falls beneath the standard of care which would be exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue." *Thaqi v. Wal-Mart Stores East, LP,* No. 09-CV-755 (JMA), 2014 WL 1330925, at *4 (E.D.N.Y. Mar. 31, 2014) (quoting *Harper v. United States,* 949 F.Supp. 130, 132 (E.D.N.Y. 1996)). To establish a fact by a preponderance of the evidence,

a plaintiff must "prove that the fact is more likely true than not true." *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quotation marks and citation omitted).

Plaintiff failed to carry his burden of proving that the United States breached its duty of care.  Thus, the United States was not negligent, and therefore not liable for plaintiff's injuries.

**A. The United States Did Not Breach Any Duty Owed to Plaintiff**

Under New York law, a transportation provider, like an operator of a courtesy shuttle, has a duty to exercise reasonable care for the safety of its passengers.  *Bethel v. N.Y. City Transit Auth.*, 92 N.Y.2d 348, 356, 703 N.E.2d 1214 (1998); *Kelly v. Otis*, 593 N.Y.S.2d 673, 673 (4th Dep't 1993); *see also Farley v. Greyhound Canada Transp. Corp.*, No. 03-cv-0344(SR), 2009 WL 1851037, at *4 (W.D.N.Y. June 26, 2009); *Hammer v. Acad. Bus Tours, Inc.*, No. 00-CV-5317 (AJP), 2001 WL 1360226, at *2 (S.D.N.Y. Nov. 6, 2001).  Thus, the shuttle operator must provide a "reasonably safe place to board and disembark" from the vehicle.  *Kasper v. Metro. Transp. Auth. Long Island Bus*, 935 N.Y.S.2d 645, 646 (2d Dep't 2011); *see also Lim v. Parent*, 176 F. Supp. 2d 207, 209 (E.D.N.Y. 2001) (New York law requires common carriers to exercise reasonable care to ensure the safety of its passengers when boarding and alighting from the vehicle.)

A common carrier, however, "has a duty to use such additional care or to render such aid" for a passenger's "safety and welfare as is reasonably required" by the existing circumstances and the passenger's disability or limiting condition, "provided that the common carrier's employees knew or should reasonably have known of the passenger's disability" or limiting condition. *Kasper*, 935 N.Y.S.2d at 647. *See, e.g., Saidoff v. New York City Transit Auth.*, 963 N.Y.S.2d 157, 158 (2d Dep't 2013) (no duty to lower bus steps where 67-year-old plaintiff did not request assistance and did not appear unable to negotiate height differential between curb and bottom step); *Santiago v. New York* City Transit Authority, 893 N.Y.S.2d 59, 60 (1st Dep't 2010) (no duty to lower platform for 57-year-old plaintiff who neither asked the driver to do so, nor appeared unable to negotiate height differential); *Trainer v. City of New York*, 838 N.Y.S.2d 512, 512-13 (1st Dep't 2007) ("In the absence of any evidence that plaintiff appeared incapable of negotiating the distance, there was no duty to lower the steps."). Moreover, a plaintiff cannot rely on a carrier's internal practice or rule to impose an additional duty on a shuttle operator, absent "evidence that the policy was reflective of an industry standard or a generally-accepted safety practice." *Carlino v. Triboro Coach Corp.*, 803 N.Y.S.2d 105, 105-06 (2d Dep't 2005) ("The plaintiff's reliance on the existence of

a company policy of the defendant requiring the lowering of a bus for elderly passengers, and the driver's alleged failure to comply with the policy, does not state a cause of action upon which relief can be granted. The plaintiff presented no evidence that the policy was reflective of an industry standard or a generally-accepted safety practice."); *see also Lovato v. New York City Transit Auth.*, 855 N.Y.S.2d 685, 686 (2d Dep't 2008) ("[T]he plaintiff failed to establish that the defendant's rules imposed a duty owed to her by the bus driver, as she did not introduce any testimony regarding industry standards and generally-accepted practices.").

Here, plaintiff's claim that the United States breached its duty by failing to provide a stepstool to assist him while boarding the Shuttle fails as a matter of law and on the facts. As discussed above, based on the evidence at trial, plaintiff failed to establish by a preponderance of the evidence that the stepstool was not in front of the Passenger Doors as plaintiff was boarding the Shuttle. Nor did the preponderance of trial evidence establish that the United States breached its duty to provide a safe means of boarding the Shuttle.

The record is void of any evidence indicating that the Shuttle and the boarding conditions were unsafe. Further, plaintiff presented no evidence of any industry standard requiring the use of a stepstool to provide a safe means of boarding and

alighting the Shuttle. Notably, plaintiff did not offer any expert testimony concerning these matters. Therefore, plaintiff has failed to carry his burden of establishing that the United States had a duty to provide a stepstool for passengers entering and exiting the van.

Nor is this a case in which the United States owed any additional duty to plaintiff. There was no evidence that there were unsafe conditions on the day of the Accident that imposed an additional duty on defendant. Further, no evidence was presented establishing that the United States knew or reasonably should have known that plaintiff would be unable to board the Shuttle without assistance. In fact, plaintiff was 52 years old at the time of the Accident and acknowledges that he did not have any visual or physical impairments that affected his ability to board the Shuttle. Accordingly, the United States had a duty to exercise reasonable care in ensuring a safe means for plaintiff to board the Shuttle. The court finds that defendant acted with reasonable care under the circumstances.

Furthermore, the credible trial evidence establishes that although not required, there was, in fact, a stepstool placed in front of the Passenger Doors when plaintiff entered the Shuttle. As set forth in the court's findings of fact, plaintiff's June 2011 Statement and the testimony of Lou Guo and Dewton Williams

establish that the stepstool was in front of the Passenger Doors as plaintiff boarded the Shuttle. Although plaintiff initially testified at trial that he did not see the stepstool at all on the day of the Accident, when confronted with his June 2011 Statement where he noted that: "As the driver pulled up, opened the doors, and put the stepstool down so people can board, passengers jumped in the van," plaintiff conceded that at the time of his June 2011 Statement, he noted that the stepstool was in place for boarding. (Ex. B.)

Accordingly, the court finds that the credible trial evidence establishes that the United States did not breach a duty to plaintiff. Although the United States had no duty to provide a stepstool to enter the Shuttle, the credible evidence at trial establishes that a stepstool was provided. Moreover, there is no evidence that plaintiff had physical limitations which were, or should have been apparent to the United States, and thus there was no additional duty of care. Therefore, the United States did not breach a duty to plaintiff and was not negligent.

## II. The Court Lacks Subject Matter Jurisdiction to Consider Plaintiff's Negligent Assault/Battery Claim

"Federal courts do not have subject matter jurisdiction over claims falling within one of the exceptions to the FTCA's waiver of sovereign immunity." *Haber v. United States*, No. 10-CV-5443 (SJF)(ARL), 2012 WL 92499, at *4 (E.D.N.Y. Jan. 10, 2012).

One such exception, commonly referred to as the intentional tort exception, excludes from the FTCA "[a]ny claim arising out of assault [or] battery. . . ." 28 U.S.C. § 2680(h); *United States v. Shearer*, 473 U.S. 52, 54 (1985) (The FTCA's "waiver of sovereign immunity does not apply to any claim arising out of assault or battery.") (citing 28 U.S.C. § 2680(h)) (modifications omitted). This exception "does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery." *Shearer*, 473 U.S. at 55 (emphasis in original). Therefore, a plaintiff cannot circumvent this exception by labeling a claim as one of negligence when, in fact, it is an intentional tort claim. *Id.* (explaining that "[n]o semantical recasting of events" can transform a tort claim into a negligence claim); *Johnson by Johnson v. United States*, 788 F.2d 845, 854 (2d Cir. 1986) ("Courts have not countenanced such attempts to transform assault and battery claims into negligence actions."); *Miele by Miele v. United States*, 800 F.2d 50, 52 (2d Cir. 1986) ("Allowing claims against the government that are stated in negligence, but actually arise from an assault and battery would defeat Congress' purpose to bar suits against the government for injuries caused by a government employee's commission of an assault and battery.") (emphasis in original).

Plaintiff claims that the United States was negligent

because, in an effort to assist him while boarding, Lou Guo pushed him, which caused him to be injured. Plaintiff further contends that he is not claiming that Mr. Guo intended to injure him when he allegedly pushed plaintiff as he was boarding the Shuttle. If any such physical contact actually occurred between Lou Guo and plaintiff, plaintiff's claim would sound in "negligent assault" or "negligent battery." Under New York law, however, there is no cause of action for negligent touching—that is "negligent assault" or "negligent battery." It is well-settled that "once intentional offensive contact has been established," the plaintiff's cause of action is one of intentional tort rather than negligence. *Sawyer v. Wight*, 196 F. Supp. 2d 220, 228 (E.D.N.Y. 2002) ("New York does not recognize negligent battery. Accordingly, 'once intentional offensive contact has been established, the actor is liable for battery and not negligence.'") (citations and modifications omitted); *Oteri v. Vill. of Pelham*, 954 N.Y.S.2d 171, 172 (2d Dep't 2012); *Schetzen v. Robotsis*, 709 N.Y.S.2d 193, 194 (2d Dep't 2000) (internal citations omitted) (quoting *Wertzberger v. City of New York*, 680 N.Y.S.2d 260, 261 (2d Dep't 1998)) ("It is well settled that no cause of action to recover damages for negligent assault exists in New York, because 'once intentional offensive contact has been established, the actor is liable for assault and not negligence.'"); *Wrase v. Bosco*, 706 N.Y.S.2d 434, 435 (2d Dep't

2000).

Although plaintiff attempts to cast his claim as a negligence claim, he has alleged that he was pushed—which, if true, would constitute "intentional offensive contact." *Sawyer*, 196 F. Supp. 2d at 228. Therefore, the court finds that plaintiff's claim that he was injured because Lou Guo pushed him is an intentional tort claim. Consequently, even if there were a preponderance of evidence that Mr. Guo pushed plaintiff, which there is not, the court would lack jurisdiction to consider plaintiff's claim because it is barred by the FTCA's intentional tort exception. *See* 28 U.S.C. § 2680(h); *Shearer*, 473 U.S. at 54.

Moreover, even if the court could consider plaintiff's negligent assault or negligent battery claim, the court finds that plaintiff has not carried his burden of proving, by a preponderance of the evidence, that Lou Guo pushed him. As discussed in greater detail above, Lou Guo credibly testified that he did not push plaintiff; Dewton Williams credibly testified that he was closer to plaintiff than Lou Guo, and that he did not see Lou Guo push plaintiff. Further, plaintiff did not report to Sgt. Annitto, immediately after Accident, that Lou Guo pushed him, nor did he report that he was pushed in his Notice of Claim. Accordingly, the court finds that plaintiff's testimony regarding Mr. Guo's alleged push was not credible, and he has not carried his burden

in proving that Lou Guo pushed him.

## CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the court concludes that the United States was not negligent, and therefore not liable for plaintiff's injuries. The Clerk of the Court is respectfully requested to enter judgment in favor of defendant and close this case.

**SO ORDERED.**

Dated:　　March 31, 2017
　　　　　　Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge